# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ruben M. Collazo, :
                  Appellant :
                        :
                        : No. 175 C.D. 2015
          v. : Submitted: July 17, 2015
                        :
Mount Airy #1, LLC :

OPINION NOT REPORTED

MEMORANDUM OPINION
PER CURIAM                            FILED: September 10, 2015

       Ruben M. Collazo (Collazo), representing himself, appeals from the order of the Monroe County Court of Common Pleas (trial court)[1] sustaining the preliminary objections in the nature of a demurrer, filed by Mount Airy #1, LLC (Mt. Airy), and dismissing Collazo's declaratory judgment claims. Collazo asserts his exclusion from the Mt. Airy casino violates his constitutional rights to due process and free speech and is impermissible under the Pennsylvania Race Horse Development and Gaming Act (Gaming Act), 4 Pa. C.S. §§1101-1904. Specifically, he argues Section 1515 of the Gaming Act, 4 Pa. C.S. §1515, limits a licensee's common law property rights to exclude patrons from its casino. The trial court determined Collazo could not prevail on his constitutional claims because Mt. Airy is not a state actor, noting he did not sue the Pennsylvania Gaming Control Board (Board) as to its regulation of Mt. Airy. Upon review, we affirm.

---

[1] The Honorable Arthur L. Zulick presided.

# I. Background

Collazo filed a series of complaints, to which Mt. Airy filed preliminary objections. In the second amended complaint, consisting of one count seeking declaratory judgment, Collazo averred Mt. Airy had no right to exclude him from its casino. He also argued generally that licensees under the Gaming Act do not have the same common law rights of other property owners to exclude persons from their licensed facilities. To the extent the Gaming Act allows licensees to exercise that common law right shared by other property owners, Collazo contends it is invalid. The relevant underlying facts, as pled, follow.

Collazo maintains an anti-gambling website described as an "internet faith-based gambling addiction forum" (Website). Certified Record (C.R.), Item No. 22, Second Am. Compl. at ¶8. The Website address is: http://mtairy-poconoscoalitionofpremiumplayers.com. Id.

In December 2010, Collazo received a telephone call from an individual purportedly from Mt. Airy security notifying him that he would no longer be permitted on the premises of the casino. Id. at ¶10. Collazo contacted counsel for Mt. Airy (Counsel), who investigated his claim and reviewed his Website. Counsel advised Collazo he was not permitted on the premises of the casino, such that he would be arrested for criminal trespass if he entered the premises. Purportedly, Counsel added that Collazo should know better as someone of "Italian origin." Id. at ¶16. Collazo characterized Counsel's statement as a "threat." Id. at ¶¶17, 19. Shortly thereafter, Collazo received a letter from Lianne

2

Asbury, Director of Security at Mt. Airy. She notified Collazo that because he was warned to avoid the premises, he would be arrested for criminal trespass if he returned.

In addition to the instant case, Collazo filed a complaint with the Board seeking redress for his exclusion from the Mt. Airy casino. Pursuant to Board regulations and Section 1514 of the Gaming Act, 4 Pa. C.S. §1514, the Board may place individuals on an excluded patron list. Collazo advised the Board he never engaged in an incident warranting exclusion. He alleged Mt. Airy did not comport with the Gaming Act or its regulations governing exclusion of patrons. The Board responded, stating Mt. Airy did not violate the Gaming Act. It also advised that Mt. Airy may exclude an individual pursuant to Section 1515 of the Gaming Act.

In his second amended complaint, Collazo challenged Mt. Airy's exclusion of him from its casino as a violation of his due process right to a hearing to disprove the allegations underlying his exclusion. He also asserted the Website is an improper basis for exclusion. Specifically, he stated:

> The issue presented in the instant proceeding is not limited to [Collazo] but challenges the ability of a licensed gaming facility from barring any individual from their [sic] facility without benefit of due process, or for any reason totally apart from the provisions set forth in the [Gaming Act], the State and U.S. Constitution and the provisions that established the [Board] and the [r]egulations (Title 58 [of the Pennsylvania Administrative Code]) that govern the licensure of a facility within Pennsylvania.

Second Am. Compl. at ¶30. Collazo then set forth the grounds for placing a patron on an exclusion list, including reference to Board regulation 58 Pa. Code §511a.4.

Collazo alleged Mt. Airy personnel improperly excluded him from the casino for various reasons. He asserted his exclusion is unconstitutional because it is based on his Italian origin, and it violates his freedom of speech. He also averred Mt. Airy wrongfully caused his arrest for defiant trespass. Collazo included allegations regarding his arrest for criminal trespass by state police, "under color of law." Id. at ¶39.

In response, Mt. Airy filed preliminary objections, asserting Collazo's second amended complaint is legally insufficient under Pa. R.C.P. No. 1028(a)(4). Mt. Airy also alleged Collazo failed to join the Board as a necessary party in accordance with Pa. R.C.P. No. 1028(a)(5).

The parties filed briefs, and the trial court heard argument on the preliminary objections. The trial court subsequently issued an order sustaining Mt. Airy's preliminary objection in the nature of a demurrer, dismissing the action.

In its opinion accompanying the order, the trial court noted Collazo attempted to enter Mt. Airy since his exclusion, resulting in two criminal proceedings, one of which resulted in a conviction for defiant trespass. The trial court explained that Collazo's allegations as to Mt. Airy's non-compliance with Section 1514 of the Gaming Act (relating to *Board* placement of a patron on an excluded patron list) do not apply to a claim regarding proper construction of

4

Section 1515 of the Gaming Act, (relating to *licensees'* rights to exclude patrons). Notably, Collazo did not contend the Board placed him on a list resulting in his exclusion from all casinos. As a result, Collazo had no right to due process and the notice provided prior to placement on the excluded patron list as set forth in Section 1514.

Further, the trial court rejected the alleged violations of Collazo's constitutional rights to free speech and procedural due process because Mt. Airy is not a state actor. To the extent Collazo asserted his exclusion was discriminatory based on his Italian heritage, the trial court also reasoned Collazo did not plead sufficient facts to allege a violation of Section 5 of the Pennsylvania Human Relations Act (PHRA)[2] regarding non-discrimination in public accommodations.

Ultimately, the trial court dismissed Collazo's second amended complaint, concluding it failed to state a cognizable legal claim. Having dismissed the action, the trial court found Mt. Airy's preliminary objection for failure to join a necessary party moot. Collazo appealed.

## II. Discussion

On appeal,[3] Collazo argues the trial court erred in construing the Gaming Act to permit his exclusion. Specifically, he claims Section 1515 of the

---

[2] Act of October 27, 1955, P.L. 744, as amended, 43 P.S. §955.

[3] On an appeal from a trial court's order sustaining preliminary objections and dismissing the complaint, we review whether the trial court committed an error of law or an abuse of discretion. Podolak v. Tobyhanna Twp. Bd. of Supervisors, 37 A.3d 1283 (Pa. Cmwlth. 2012).

Gaming Act does not permit his exclusion from Mt. Airy's casino because he is not a repeat offender, and he was not convicted of a misdemeanor or felony committed on the premises.[4]  Collazo contends Mt. Airy, as a licensee, may not exercise common law rights as a property owner because the Gaming Act limits its authority to exclude patrons.

### A. Legal Standard for Preliminary Objections

When considering preliminary objections, we must consider as true all well-pled material facts set forth in the complaint and all reasonable inferences that may be drawn from those facts.  R.H.S. v. Allegheny Cnty. Dep't of Human Servs., 936 A.2d 1218 (Pa. Cmwlth. 2007).  However, we need not accept legal conclusions.  Petsinger v. Dep't of Labor & Indus., Office of Vocational Rehab., 988 A.2d 748 (Pa. Cmwlth. 2010).  Preliminary objections in the nature of a demurrer should be sustained only where the pleadings are clearly insufficient to establish a right to relief; any doubt must be resolved in favor of overruling the demurrer.  Mazur v. Trinity Area Sch. Dist., 961 A.2d 96 (Pa. 2008); R.H.S.

Primarily, Collazo seeks a declaration that Mt. Airy's exclusion of him from its casino is invalid because the grounds for his exclusion are not listed in the Gaming Act.  He also seeks a declaration that the comments contained on the

---

[4]  In his statement of the questions involved, Collazo also challenges the prosecution of criminal trespass charges, asserting the trial court did not "give binding effect to [his] presumption of innocence," and contending he is a victim of malicious prosecution.  Appellant's Br. at 6.  As these claims were not set forth in his declaratory judgment complaint, we do not address them.  Moreover, Collazo cannot utilize the declaratory judgment process to collaterally attack his arrest or prosecution for criminal trespass.  See Guarrasi v. Scott, 25 A.3d 394 (Pa. Cmwlth. 2011).

Website constitute expressions of protected free speech. Based on the facts pled, we consider whether Collazo states a claim for which relief may be granted.

## B. Declaratory Relief

The Declaratory Judgments Act (DJA), 42 Pa. C.S. §§7531-7541, is properly invoked to "settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and is to be liberally construed and administered." 42 Pa. C.S. §7541(a); Se. Pa. Transp. Auth. v. City of Phila., 20 A.3d 558 (Pa. Cmwlth. 2011). Pursuant to Section 7532 of the DJA, a court may "declare rights, status and other legal relations" between parties. 42 Pa. C.S. §7532.

To sustain a declaratory judgment action, a plaintiff must demonstrate an actual controversy indicating imminent and inevitable litigation and a direct, substantial, and present interest. Buehl v. Beard, 54 A.3d 412 (Pa. Cmwlth. 2012). A declaratory judgment action is an inappropriate mechanism to determine rights in anticipation of events that may never occur. McClellan v. Pa. State Police, 619 A.2d 799 (Pa. Cmwlth. 1992) (threat of future police activity is not proper basis for declaratory relief).

The purpose of the DJA is "remedial." 42 Pa.C.S. § 7541(a). A "remedial law" provides a "means to enforce rights or redress injuries." BLACK'S LAW DICTIONARY 1319 (8th ed. 1999). As to the remedy, the DJA states:

> Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the

> instrument, <u>statute</u>, ordinance, contract, or franchise, <u>and obtain a declaration of rights, status, or other legal relations thereunder</u>.

42 Pa.C.S. §7533 (emphasis added).  Thus, the DJA is an appropriate vehicle to resolve matters of statutory construction.

## 1. Statutory Construction
## a. Section 1515-Discretionary Exclusion

The Gaming Act preserves the common law rights of property owners in Section 1515, entitled "Repeat offenders excludable from licensed gaming facilities."  The provision provides:

> A licensed gaming entity may exclude or eject from its licensed facility any person who is known to it to have been convicted of a misdemeanor or felony committed in or on the premises of any licensed facility. <u>Nothing</u> in this section or in any other law of this Commonwealth <u>shall limit the right of a licensed gaming entity to exercise its common law right to exclude or eject permanently from its licensed facility</u> any person who disrupts the operations of its premises, threatens the security of its premises or its occupants or is disorderly or intoxicated.

4 Pa. C.S. §1515 (emphasis added).  The Gaming Act thus permits licensees to exercise their common law rights to exclude persons from their licensed facilities.

"[I]ncluded in the bundle of rights constituting 'property' is the right to exclude other persons …."  <u>Petition of Borough of Boyertown</u>, 466 A.2d 239, 245-46 (Pa. Cmwlth. 1983) (citing <u>Loretto v. Teleprompter Manhattan CATV Corp.</u>, 458 U.S. 419 (1982)).  This right includes the right to remove persons by force if necessary.  <u>Yoder v. Yoder</u>, 86 A. 523 (Pa. 1913).

8

## b. Section 1514-Mandatory Exclusion

In part, Collazo contends casinos are not entitled to the same common law property rights as other property owners because they are subject to the excluded patron list criteria established in Section 1514 of the Gaming Act and Board regulation 58 Pa. Code §511a.3.  Section 1514 of the Gaming Act, entitled "Regulation requiring exclusion or ejection of certain persons," provides, in pertinent part:

> (a) General rule. The [B]oard shall by regulation provide for the establishment of a list of persons who are to be excluded or ejected from any licensed facility. The provisions shall define the standards for exclusion and shall include standards relating to persons who are career or professional offenders as defined by regulations of the [B]oard or whose presence in a licensed facility would, in the opinion of the [B]oard, be inimical to the interest of the Commonwealth or of licensed gaming therein, or both.
>
> (b) Categories to be defined.  The [B]oard shall promulgate definitions establishing those categories of persons who shall be excluded or ejected pursuant to this section, including cheats and persons whose privileges for licensure, certification, permit or registration have been revoked.

4 Pa. C.S. §1514 (emphasis added).  Section 1514 also provides for written notice and a hearing prior to placing a person on an exclusion list.  The Board defined such categories of persons who shall be placed on an excluded list as follows:

> (1)  A career or professional offender whose presence in a licensed facility would, in the opinion of the Board, be inimical to the interest of the Commonwealth or of licensed gaming therein, or both.
>
> (2)  An individual with a known relationship or connection with a career or professional offender whose presence in a

9

licensed facility would be inimical to the interest of the Commonwealth or of licensed gaming therein, or both.

(3) A person who has been convicted of a criminal offense under the laws of any state, or of the United States, which is punishable by more than 1 year in prison, or who has been convicted of any crime or offense involving moral turpitude, and whose presence in a licensed facility would be inimical to the interest of the Commonwealth or of licensed gaming therein, or both.

(4) A person whose presence in a licensed facility would be inimical to the interest of the Commonwealth or of licensed gaming therein [….]

58 Pa. Code §511a.3.

### c. Comparison

Section 1514 mandates exclusion from *any* licensed facility of any patron placed on the Board's list. The provision offers another means of barring a patron that applies to all licensees as opposed to one particular licensee (Mt. Airy). Licensees are thus required to exclude or eject any patrons who are on the excluded patrons list from their facility under this provision. By contrast, Section 1515 permits licensees to exercise discretion as to removal of patrons who are not on the excluded patrons list by preserving their common law property rights.

We agree with the trial court that Section 1514 does not limit the rights of licensees.[5] Whereas Section 1514 of the Gaming Act and 58 Pa. Code

---

[5] The second amended complaint is not a model of clarity, as Collazo cites Section 1514 of the Gaming Act throughout the pleading and in his uncounseled brief in various contexts. In the event Collazo intended to challenge the criteria for placement on an excluded patron list under Section 1514, or other Board action, declaratory relief would not be appropriate because **(Footnote continued on next page…)**

10

§511a.3 set forth criteria for mandatory exclusion from a licensed facility, such criteria are not exhaustive as to discretionary exclusion under Section 1515. Accordingly, we reject Collazo's argument that Section 1514 limits a licensee's grounds for discretionary exclusion under Section 1515.

Section 1515 expressly allows a licensee to exclude patrons "who [are] known to have been convicted of a misdemeanor or felony in or <u>on the premises of any licensed facility</u>." 4 Pa. C.S. §1515 (emphasis added). Also, regardless of a past conviction based on conduct at some licensed facility, Section 1515 allows a licensee to exclude a person based on his or her present or past <u>conduct at its premises</u>, when that person is: (1) disruptive; (2) threatening; (3) disorderly; or (4) intoxicated. Nowhere does Section 1515 state that these are the only grounds for exclusion.

Collazo asserts the title of Section 1515, "Repeat offenders excludable from licensed gaming facilities," requires more than one incident of the offensive conduct. We disagree. The language of a heading does not govern a provision's content. 1 Pa. C.S. §1924 ("headings prefixed to titles, parts, articles, chapters, sections, and other divisions of a statute shall not be considered to control …"). Instead, it offers a tool for construing a provision's meaning. <u>Id</u>. The language in the title of Section 1515 generally refers to the first sentence of the provision, which sets forth a licensee's ability to exclude from its facility someone

---

**(continued…)**

he would need to first exhaust his administrative remedies. <u>Bayada Nurses, Inc. v. Dep't of Labor & Indus.</u>, 8 A.3d 866 (Pa. 2010).

11

previously convicted of a felony or misdemeanor offense committed at any licensed facility. The title also generally refers to the second sentence of Section 1515, which preserves a licensee's common law right to exclude a person based on past conduct at its premises, even if that conduct was not criminal in nature or did not result in a conviction. Thus, a licensee need not suffer repeat offenses.

Collazo construes Section 1515 as a provision that sets forth a finite list of grounds for excluding patrons from licensed facilities. We disagree with his premise. The second sentence of Section 1515 demonstrates the intent to confirm a licensee's common law rights of ejection or exclusion. Thus, in addition to the circumstances expressed in the first sentence of Section 1515, a licensee may also exclude a person from its otherwise public facility based on his or her conduct, consistent with the common law. We reject Collazo's arguments to the contrary.

Mt. Airy is authorized by Section 1515 to exclude him based on his conduct at its premises. Here, there is no dispute that Collazo's Website portrays Mt. Airy in a negative light. Also, there is no disagreement that Collazo left business cards containing information about the Website at the Mt. Airy casino. Collazo acknowledges responsibility for the Website. Mt. Airy advised Collazo it was excluding him from its premises because it deemed his placement of the business cards in its casino disruptive. Discretionary exclusion by a licensee based on disruptive conduct at its licensed facilities is clearly authorized by Section 1515.

In short, the only limitations Section 1515 recognizes as to Mt. Airy's discretion to exclude patrons it deems disruptive or disorderly are those based in

12

the common law. Collazo does not direct our attention to any such common law limitations. Thus, the trial court did not err in construing Section 1515 of the Gaming Act to permit Mt. Airy to exercise its discretion to exclude Collazo based on the facts pled.

## 2. Constitutional Claims[6]

To state a claim for a constitutional violation, such as a deprivation of procedural due process or of freedom of speech, the complainant must allege state action. W. Pa. Socialist Workers 1982 Campaign v. Conn. Gen. Life Ins. Co., 485 A.2d 1 (Pa. Super. 1984). This Court recognized, "[t]he action of the private racing association, albeit a licensed corporation … in ejecting a patron is not state action." Staino v. Pa. State Horse Racing Comm'n, 512 A.2d 75, 77 (Pa. Cmwlth. 1986).

Significantly, Collazo does not allege any state action aside from the action of the Pennsylvania State Police (PSP) to arrest him for trespass. In his uncounseled brief, Collazo attempts to remedy this omission, stating "[the] Commonwealth of Pennsylvania is a 55 percent majority shareholder in gambling venues." Appellant's Br. at 12. However, our review of a trial court's determination on preliminary objections is limited to the contents of the complaint and any attachments thereto. Thomas v. Corbett, 90 A.3d 789 (Pa. Cmwlth. 2014). Thus, we cannot consider this allegation. Id.

---

[6] Section 1904 of the Gaming Act provides that our Supreme Court has "exclusive jurisdiction to hear any challenge to or render a declaratory judgment concerning the constitutionality of [the Gaming Act]." 4 Pa. C.S. §1904; Pa. State Troopers Ass'n v. Pa. Gaming Control Bd., 920 A.2d 173, 176 n.8 (Pa. 2007). From our review of the second amended complaint, Collazo does not challenge the constitutionality of the Gaming Act itself. Rather, he contends Mt. Airy's act of excluding him from the casino violated his constitutional rights to due process and free speech, and undermined the statutory due process afforded by Section 1514 of the Gaming Act.

13

Nevertheless, that Mt. Airy is a licensee subject to Board regulation does not render it a state actor. Staino. Collazo cites no authority for the proposition that issuance of a license or permit to a private business entity, such as a bar, casino, mine or landfill, suffices to show government action.

Aside from lack of state action, we consider the legal sufficiency of Collazo's allegations that Mt. Airy's exclusion violated his constitutional rights to due process and to free speech.

## a. Due Process

The threshold inquiry in any due process analysis is whether there exists any identifiable property or liberty interest at issue. Phila. Entm't & Dev. Partners, L.P. v. Pa. Gaming Control Bd., 34 A.3d 261 (Pa. Cmwlth. 2011) (en banc). "[W]ithout such an interest, due process is not applicable." Id. at 276 (citations omitted).

Once an interest is found within the zone of protected interests, the issue becomes what type of a process is due. Lopez v. Dep't of Corr., __ A.3d __ (Pa. Cmwlth., No. 546 M.D. 2013, filed June 26, 2015). A person only has a right to a due process hearing when the following two-prong test is met: (1) the challenged action has caused that party an injury in fact, economic or otherwise; and, (2) the interest asserted by the plaintiff is within the zones of interests sought to be protected or regulated by the statute or constitutional guarantee in question. Muscarella v. Com., 87 A.3d 966 (Pa. Cmwlth. 2014) (en banc).

14

Here, Collazo claims a vague right to due process before the Mt. Airy casino may exclude him. However, he fails to identify any common law right to force the Mt. Airy casino to admit him to its privately-owned facility over its objection. Indeed, this Court previously determined the Board's exercise of discretion not to institute an enforcement action against Mt. Airy did not "affect Collazo's 'personal or property rights, privileges immunities, duties, liabilities or obligations.'" Collazo v. Pa. Gaming Control Bd. (Pa. Cmwlth., No. 1083 C.D. 2011, filed February 23, 2012) (per curiam) (unreported), slip op. at 6 (citing 2 Pa. C.S. §101; 58 Pa. Code §491a.2). Accordingly, Collazo does not state a sufficient interest that is protectable by due process under the constitution.

Further, there is no statutory authority entitling Collazo due process prior to being barred from Mt. Airy's casino under Section 1515. In contrast to Section 1514, Section 1515 does not require licensees to provide prior notice or a hearing to exclude a patron.

Having failed to identify either an interest protected at common law or a statutory provision of certain process, Collazo cannot state a claim for violation of constitutional protection of due process.

### b. Free Speech

Likewise, Collazo's free speech and freedom of expression claims fail. Collazo refers to the "constitution" as affording him a right of free speech and

of free expression.[7]  The free speech provision of the First Amendment of the U.S. Constitution,[8] applicable to the states by way of the Fourteenth Amendment, does not prevent a privately-owned and operated business from banning certain activity on its premises.  W. Pa. Socialist Workers 1982 Campaign; see also W. Pa. Socialist Workers v. Conn. Gen. Life Ins. Co., 515 A.2d 1331 (Pa. 1986) (plurality opinion).

Here, the alleged free speech activity is the placement of business cards referring to his Website throughout the Mt. Airy casino.  However, Mt. Airy deemed this activity disruptive, and it is permitted to ban disruptive activity at its facility.  Id.

---

[7] The rights to association and free speech are guaranteed by Article I, Sections 7 and 20 of the Pennsylvania Constitution.  Article I, Section 7 provides:

> [T]he printing press shall be free to every person who may undertake to examine the proceedings of the Legislature or any branch of government, and no law shall ever be made to restrain the rights thereof.  The free communication of thought and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty.

PA. CONST. art. I, §7.  Article I, Section 20 provides: "The citizens have a right in a peaceable manner to assemble together for their common good, and to apply to those invested with the powers of government for redress of grievances or other proper purposes, by petition, address or remonstrate."  Id. at art. I, §20.

[8] The First Amendment states: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."  U.S. CONST. amend. I.

### c. Discrimination/Equal Protection

The second amended complaint contains no allegations that Mt. Airy excluded him from the premises of the casino based on his Italian heritage, or on some other improper criterion. The only relevant averment in the complaint alleges that Counsel reprimanded Collazo for maintaining the Website when he is someone of "Italian origin." See C.R., Item No. 22, Second Am. Compl. at ¶16. Thus, the pleading does not fairly comprise a discrimination or equal protection claim. In addition, we agree with the trial court that Collazo did not allege sufficient facts to plead a violation of the PHRA, 43 P.S. §955, prohibiting unlawful discriminatory practices in public accommodations.

Further, Collazo did not brief a discrimination claim, so any such claim is waived. See Pa. R.A.P. 2119.

Because Collazo fails to state a claim for violation of his constitutional rights, the trial court properly dismissed his constitutional claims.

### III. Conclusion

Based on the foregoing reasons, we affirm the trial court's order.

17

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ruben M. Collazo,    :
          Appellant    :
                    :   No. 175 C.D. 2015
         v.    :
                    :
Mount Airy #1, LLC    :

PER CURIAM

## **O R D E R**

**AND NOW**, this 10th day of September, 2015, the order of the Court of Common Pleas of Monroe County is **AFFIRMED**.